ACCEPTED
06-15-00127-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/30/2015 11:47:27 AM
DEBBIE AUTREY
CLERK

# SIXTH COURT OF APPEALS

## 06-15-00127-CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

12/30/2015 11:47:27 AM

DEBBIE AUTREY
Clerk

## *Thien Quoc Nguyen, Appellant*
## *v.*
## *State of Texas, Appellee*

### On Appeal from the 19th Judicial District Court
### McLennan County
### Cause Number 2012-2444-C1

# Appellant's Brief

**Michael Mowla**
**P.O. Box 868**
**Cedar Hill, TX 75106**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellant**

## *If the Court's decisional process will be aided by oral argument, oral argument is requested*

# I.    Identities of Parties, Counsel, and Judges

Thien Quoc Nguyen, Appellant.

Michael Mowla, attorney for Appellant on appeal

Walter "Skip" Reaves, attorney for Appellant at trial

Jessica Shaye "Jessi" Freud, attorney for Appellant at trial

State of Texas, Appellee.

Abel Reyna, McLennan County District Attorney

Evan O'Donnell, McLennan County Assistant District Attorney

Robert Moody, McLennan County Assistant District Attorney

Sterling Harmon, McLennan County Assistant District Attorney

Hon. Ralph T. Strother, Presiding Judge, 19th Judicial District Court, McLennan County

**II.    Table of Contents**

**I.**    Identities of Parties, Counsel, and Judges .......................................................2

**II.**    Table of Contents.............................................................................................3

**III.**    Index of Authorities.........................................................................................6

**IV.**    Statement of the Case and Jurisdiction...........................................................13

**V.**    Statement Regarding Oral Argument ...............................................................16

**VI.**    Issues Presented.............................................................................................17

**VII.**    Facts..............................................................................................................18

**VIII.**    Summary of the Arguments............................................................................20

**IX.**    Argument .......................................................................................................21

    1.    Issue One: The evidence is legally insufficient to prove that Appellant committed Aggravated Assault with a deadly weapon because no evidence was presented that Appellant intentionally, knowingly, or recklessly caused bodily injury to the CW by driving recklessly, causing the CW to crash his motorcycle while Appellant used an automobile as a deadly weapon. ...........................21

        **i.**    Introduction ........................................................................................21

        **ii.**    Standard of review on claims of legal insufficiency under *Jackson v. Virginia* and *Brooks*............................................................22

        **iii.**    Elements of Aggravated Assault ............................................................24

        **iv.**    The State failed to prove beyond a reasonable doubt that Appellant acted in a reckless manner, much less with intent or knowledge ........................................................................................25

        **v.**    What occurred in this case is an accident and nothing more due to the careless operation of the motorcycle by the CW....................27

        **vi.**    Appellant's actions were at worst negligent, and not committed recklessly, intentionally, or knowingly ................................31

        **vii.**    The evidence was legally insufficient to show that Appellant used his vehicle as a deadly weapon because: (1) the manner of Appellant's use of the vehicle or Appellant's intended use of the vehicle was not capable of causing death or serious bodily injury, and (2) the vehicle did not "facilitate the associated felony." .........................................................36

**viii.** Public policy considerations.................................................................40

**ix.** Conclusion.................................................................................41

2.  Issue Two: Appellant's Sixth Amendment rights to a speedy trial were violated because: (1) the trial court denied Appellant the benefit of a speedy trial because although Appellant had been incarcerated since October 24, 2012 and he requested a speedy trial on July 22, 2014, trial did not commence until June 9, 2015; and (2) the State and trial court violated their duty, responsibility, and burden of bringing Appellant to trial within the time guaranteed by the Sixth Amendment. ............................42

**i.** Argument.................................................................................42

**ii.** Conclusion.................................................................................47

3.  Issue Three: The trial court erred and caused harm to Appellant because in its instructions to the jury, it failed to comply with Texas Code of Criminal Procedure Article 36.14 and the Sixth Amendment by committing the following errors: (1) submission of the option of the "reckless" mental state; (2) submission of the options of the "intentional" or "knowing" mental states; (3) submission of the deadly weapon theory; (4) failure to submit lesser-included offense options; and (5) submitting a misleading theory and commenting on causation and result. ........................49

**i.** Error in submission of the option of the "reckless" mental state.................................................................................49

**ii.** Error in submission of the options of the "intentional" or "knowing" mental states.................................................................54

**iii.** Error in submission of the deadly weapon theory.................................57

**iv.** Error in failure to submit lesser-included offense options......................58

**v.** Error in submitting a misleading theory and comment on causation and result .................................................................63

**vi.** Conclusion.................................................................................66

4.  Issue Four: By excusing five prospective jurors "for cause" because of alleged prior arrests, but without legal cause in fact as required by Texas Code of Criminal Procedure Article 35.16, the trial court erred and deprived Appellant of the right of a jury selected in under Article 35.16 and as required by the Sixth

Amendment. A defendant's substantial rights are violated when a trial court breaches the same procedural statute multiple times.............................................................................................67

    **i.**   Argument.................................................................................67

    **ii.**  Conclusion..............................................................................72

5.  Issue Five: The trial court committed reversible error and violated Appellant's Sixth Amendment rights to confront a material witness by refusing to permit Appellant to show the exceptional bias or interest of the complaining witness and admit evidence that the complaining witness had a pending civil suit against Appellant arising out of the same incident...............73

    **i.**   Argument.................................................................................73

    **ii.**  Conclusion..............................................................................78

**X.**   Conclusion and Prayer..............................................................................79

**XI.**  Certificate of Service ................................................................................80

**XII.** Certificate of Compliance with Tex. Rule App. Proc. 9.4 ............................80

## III. Index of Authorities

**Cases**

*Abdygapparova v. State*, 243 S.W.3d 191 (Tex. App. San Antonio 2007, *pet. ref.*) ...................................................................70

*Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011) ....................................23

*Aliff v. State*, 627 S.W.2d 166 (Tex. Crim. App. 1982) .................................... 31, 33

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (*op. on rehearing*) ...................................................................... 55, 57

*Archie v. State*, 511 S.W.2d 942 (Tex. Crim. App. 1974) ....................................47

*Arzaga v. State*, 86 S.W.3d 767 (Tex. App. El Paso 2002, *no pet.*) ...................................................................................29

*Avilez v. State*, 333 S.W.3d 661 (Tex. App. Houston [1st Dist.] 2010, *pet. ref.*) .....................................................................71

*Barker v. Wingo*, 407 U.S. 514 (1972) ...................................................... 42, 43, 44

*Bell v. State*, 169 S.W.3d 384 (Tex. App. Fort Worth 2005, *pet. ref.*) .......................................................................................35

*Billodeau v. State*, 277 S.W.3d 34 (Tex. Crim. App. 2009) ...................................76

*Blount v. State*, 257 S.W.3d 712 (Tex. Crim. App. 2008) ....................................24

*Brewer v. State*, 126 S.W.3d 295 (Tex. App. Beaumont 2004) ..............................25

*Bridges v. State*, 389 S.W.3d 508 (Tex. App. Houston [14th Dist.] 2012) ...............................................................................58

*Brown v. State*, 122 S.W.3d 794 (Tex. Crim. App. 2003) ....................................71

*Brumit v. State*, 206 S.W.3d 639 (Tex. Crim. App. 2006) ....................................70

*Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011) ........................................40

*Cada v. State*, 334 S.W.3d 766 (2011) ...............................................................56

*Cantu v. State*, 253 S.W.3d 273 (Tex. Crim. App. 2008) (en banc) ............................................................................. 42, 43

*Carpenter v. State*, 979 S.W.2d 633 (Tex. Crim. App. 1998) ...............................77

*Carroll v. State*, 916 S.W.2d 494 (Tex. Crim. App. 1996) ............................. 73, 77

*Cates v. State*, 102 S.W.3d 735 (Tex. Crim. App. 2003) ......................................40

*Chappell v. State,* 850 S.W.2d 508 (1993) ..........................................................69

6

*Clark v. Arizona*, 548 U.S. 735 (2006) ...................................................................34

*Conner v. State*, 67 S.W.3d 192 (Tex. Crim. App. 2001)..........................................23

*Cox v. State*, 523 S.W.2d 695 (Tex. Crim. App. 1975) ..................................... 73, 75

*Daniell v. State*, 848 S.W.2d 145 (Tex. Crim. App. 1993)........................................65

*Davis v. Alaska*, 415 U.S. 308 (1974)......................................................................73

*DeJonge v. Oregon*, 299 U.S. 353 (1937) ...............................................................55

*Delapaz v. State*, 228 S.W.3d 183 (Tex. App. Dallas 2007, *pet. ref.*)......................................................................................................65

*Dockstader v. State*, 233 S.W.3d 98 (Tex. App. Houston [14th Dist.] 2007, *pet. ref.*)......................................................................70

*Doggett v. United States*, 505 U.S. 647 (1992)........................................................43

*Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441 (Tex. App. Houston [1st Dist.] 1993, *no writ*) ...............................................74

*Doyle v. State*, 631 S.W.2d 732 (Tex. Crim. App. 1982) ..........................................66

*Dragoo v. State*, 96 S.W.3d 308 (Tex. Crim. App. 2003) .........................................42

*Duncan v. Louisiana*, 391 U.S. 145 (1968) .............................................................70

*Duren v. State*, 87 S.W.3d 719 (Tex. App. Texarkana 2002)....................................26

*Easley v. State*, 564 S.W.2d 742 (Tex. Crim. App. 1978).........................................47

*English v. State*, 828 S.W.2d 33 (Tex. App. Tyler 1991, *pet. ref.*).................................................................................................. 37, 38

*Ex parte McKithan*, 838 S.W.2d 560 (Tex. Crim. App. 1992)...................................36

*Fisher v. State*, 887 S.W.2d 49 (Tex. Crim. App. 1994) ...........................................50

*Forbes v. Lanzl*, 9 S.W.3d 895 (Tex. App. Austin 2000, *pet. denied*) .................................................................................................74

*Francis v. Marshall*, 841 S.W.2d 51 (Tex. App. Houston [14th Dist.] 1992, *no writ*)......................................................................74

*Geick v. State*, 349 S.W.3d 542 (Tex. Crim. App. 2011) ..........................................54

*Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001)........................................23

*Graham v. State*, 657 S.W.2d 99 (Tex. Crim. App. 1983) .......................................33

*Guzman v. State*, 988 S.W.2d 884 (Tex. App. Corpus Christi 1999, *no pet.*) .......................................................................................24

*Hall v. State*, 145 S.W.3d 754 (Tex. App. Texarkana 2004)....................................24

*Hammer v. State*, 296 S.W.3d 555 (Tex. Crim. App. 2009)..............................76

*Henson v. State*, 407 S.W.3d 764 (Tex. Crim. App. 2013) ..............................46

*Henson v. State*, 407 S.W.3d 764 (Tex. Crim. App. 2013) ..............................44

*Hill v. State*, 913 S.W.2d 581 (Tex. Crim. App. 1996) ..............................................38

*Hoang v. State*, 997 S.W.2d 678 (Tex. App. Texarkana 1999,
    *no pet.*) ..............................................................64

*Hogenson v. Williams*, 542 S.W.2d 456 (Tex. Civ. App.
    Texarkana 1976, *no writ*)......................................................75

*Hollander v. State,* 414 S.W.3d 746 (Tex. Crim. App. 2013) ..............................52

*Hoyos v. State*, 982 S.W.2d 419 (Tex. Crim. App. 1998) ......................................73

*In re K.W.G.*, 953 S.W.2d 483 (Tex. App. Texarkana 1997) ..............................27

*Isassi v. State*, 330 S.W.3d 633 (Tex. Crim. App. 2010) ......................................23

*Isbell v. State*, 681 S.W.2d 640 (Tex. App. Houston [14th Dist.]
    1984, *pet. ref.*) ..............................................................32

*Jackson v. Virginia*, 443 U.S. 307 (1979)......................................... 22, 23

*Jefferson v. State*, 974 S.W.2d 887 (Tex. App. Austin 1998) ..............................36

*Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012) ...................... 23, 24, 50

*Johnson v. State*, 452 S.W.3d 398 (Tex. App. Amarillo 2014,
    *pet. ref.*) ..............................................................71

*Jones v. State*, 982 S.W.2d 386 (1998) ..........................................................68

*Kincade v. State*, 552 S.W.2d 832 (Tex. Crim. App. 1977) ..............................64

*Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012)..............................65

*Klopfer v. North Carolina*, 386 U.S. 213 (1967).............................................42

*Knight v. State*, 839 S.W.2d 505 (Tex. App. Beaumont 1992, *no
    pet.*) ..............................................................72

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) .............................. 22, 23

*Lewis v. State*, 529 S.W.2d 550 (Tex. Crim. App. 1975) .......................... 27, 31, 33

*Louis v. State*, 329 S.W.3d 260 (Tex. App. Texarkana 2010),
    *affirmed*, 393 S.W.3d 246 (Tex. Crim. App. 2012) ....................................34

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) ......................................52

*Marlow v. State*, 537 S.W.2d 8, 9 (Tex. Crim. App. 1976).....................................65

*Masterson v. State*, 155 S.W.3d 167 (Tex. Crim. App. 2005)................................63

*McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2000)....................................60

*McCormick v. Texas Commerce Bank*, 751 S.W.2d 887 (Tex. App. Houston [14th Dist.] 1988, *writ denied*)................................74

*McKay v. State*, ___ S.W.3d ___, No. PD-1133-14, 2015 Tex. Crim. App. LEXIS 1171 (Tex. Crim. App. Nov. 4, 2015)..........................59

*McKinney v. State*, 505 S.W.2d 536 (Tex. Crim. App. 1974) ................................46

*Mendieta v. State*, 706 S.W.2d 651 (Tex. Crim. App. 1986) ................................32

*Montez v. State*, 824 S.W2d 308 (Tex. App. San Antonio 1992, *no pet.*) ................................................................................72

*Montgomery v. State*, 369 S.W.3d 188 (Tex. Crim. App. 2012) ............................33

*Mosley v. State*, 545 S.W.2d 144 (Tex. Crim. App. 1976) ....................................61

*Narvaiz v. State*, 840 S.W.2d 415 (Tex. Crim. App. 1992)....................................23

*Northcutt v. City of Hearne*, No. 10-14-00012-CV, 2015 Tex. App. LEXIS 7932 (Tex. App. Waco July 30, 2015, *pet. filed*) (mem. op.) ..................................................35

*Olden v. Kentucky*, 488 U.S. 227 (1988)................................................................76

*Powell v. State*, 194 S.W.3d 503 (Tex. Crim. App. 2006) ....................................23

*Prible v. State*, 175 S.W.3d 724 (Tex. Crim. App. 2005).......................................22

*Ramos v. State,* 407 S.W.3d 265 (Tex. Crim. App. 2013).....................................50

*Ray v. State*, 880 S.W.2d 795 (Tex. App. Houston [1st Dist.] 1994) ......................................................................................36

*Reed v. State*, 117 S.W.3d 260 (Tex. Crim. App. 2003).........................................51

*Rivera v. State*, 271 S.W.3d 301 (Tex. App. San Antonio 2008)..................... 24, 39

*Robalin v. State*, 224 S.W.3d 470 (Tex. App. Houston [1st Dist.] 2007, *no pet.*) ......................................................63

*Roberts v. State*, 784 S.W.2d 430 (Tex. Crim. App. 1990) ...................................70

*Robertson v. State*, 109 S.W.3d 13 (Tex. App. El Paso 2003, *no pet.*) ................................................................................ 32, 33

*Rodriguez v. State*, 352 S.W.3d 548 (Tex. App. Beaumont 2011) ........................................................................................25

*Romero v. State*, 800 S.W.2d 539 (Tex. Crim. App. 1990)......................................68

*Saunders v. State*, 913 S.W.2d 564 (Tex. Crim. App. 1995)...................................63

*Schmuck v. United States*, 489 U.S. 705 (1989) ....................................................55

*Sheridan v. State*, 950 S.W.2d 755 (Tex. App. Fort Worth 1997) ...........................................................................................39

*Sierra v. State*, 280 S.W.3d 250 (Tex. Crim. App. 2009)......................................40

*Sneed v. State*, 803 S.W.2d 833 (Tex. App. Dallas 1991, *pet. ref.*).................................................................................................25

*Stadt v. State*, 182 S.W.3d 360 (Tex. Crim. App. 2005) ................................. 31, 33

*State v. Munoz*, 991 S.W.2d 818 (Tex. Crim. App. 1999) (en banc)...............................................................................................46

*State v. Rodriguez,* 339 S.W.3d 680 (Tex. Crim. App. 2011) ...............................51

*Stirone v. United States*, 361 U.S. 212 (1960)......................................................54

*Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990) ....................................51

*Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007) ....................................58

*Thomas v. State*, 699 S.W.2d 845 (Tex. Crim. App. 1985).....................................34

*Thornton v. State*, 377 S.W.3d 814 (Tex. App. Amarillo 2012), *vacated on another ground*, No. PD-1517-12, 2013 Tex. Crim. App. Unpub. LEXIS 48, 2013 WL 105874 (Tex. Crim. App. Jan. 9, 2013) (unpublished) ........................................39

*Tucker v. State*, 274 S.W.3d 688 (Tex. Crim. App. 2008) ....................................59

*Turner v. State*, 664 S.W.2d 86 (Tex. Crim. App. 1983) ......................................36

*United States v. Miller*, 471 U.S. 130 (1985) ......................................................54

*Waffle House, Inc. v. Williams*, 313 S.W.3d 796 (Tex. 2010)................................74

*Ward v. State*, 72 S.W.3d 413 (Tex. App. Fort Worth 2002) ................................49

*Ward v. State*, 72 S.W.3d 413 (Tex. App. Fort Worth 2002, *no pet.*) ...............................................................................................64

*Whaley v. State*, 717 S.W.2d 26 (Tex. Crim. App. 1986).....................................65

*Williams v. State*, 417 S.W.3d 162 (Tex. App. Houston [1st Dist.] 2013, *pet. ref.*)........................................................................69

*Wilson v. State*, 625 S.W.2d 331 (Tex. Crim. App. 1981) ....................................52

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013)..................................23

*Wise v. State*, 364 S.W.3d 900 (Tex. Crim. App. 2012)....................................22

*Ybarra v. State*, 890 S.W.2d 98 (Tex. App. San Antonio 1994,
    *pet. ref.*).........................................................................................33

*Zamorano v. State*, 84 S.W.3d 643 (Tex. Crim. App. 2002)..................................43

**Statutes**

Tex. Code Crim. Proc. Art. 21.15 (2015) ......................................................50

Tex. Code Crim. Proc. Art. 35.11 (2015) ......................................................71

Tex. Code Crim. Proc. Art. 35.16 (2015) ......................................................67

Tex. Code Crim. Proc. Art. 35.20 (2015) ......................................................71

Tex. Code Crim. Proc. Art. 36.14 (2015) ......................................................49

Tex. Code Crim. Proc. Art. 37.07 (2015) ......................................................14

Tex. Code Crim. Proc. Art. 44.25 (2015) ......................................................23

Tex. Pen. Code § 22.01 (2012) ............................................................ 21, 58

Tex. Pen. Code § 6.03 (2012) ....................................................... 25, 26, 33

**Other Authorities**

Comm. on Pattern Jury Charges, Texas Pattern Jury Charges—
    General Negligence § 6.6 (State Bar of Texas 2006)....................................75

Elizabeth A. Martin, *Oxford Dictionary of Law*. Oxford: Oxford
    University Press (2003) ..................................................................25

Searcy, *Pleading and Proving the Culpable Mental States
    Under the New Texas Penal Code*, 6 Am. J. Crim. Law
    243 (1978)...............................................................................26

**Rules**

Tex. Rule App. Proc. 25.2 (2015)..............................................................14

Tex. Rule App. Proc. 26.2 (2015)..............................................................14

Tex. Rule App. Proc. 39 (2015).................................................................16

Tex. Rule App. Proc. 43.2 (2015)..............................................................23

Tex. Rule App. Proc. 44.2 (2015)..............................................................77

Tex. Rule App. Proc. 9.4 (2015)................................................................80

Tex. Rule App. Proc. 9.5 (2015)............................................................80

Tex. Rule Evid. 401 (2015)...................................................................56

Tex. Rule Evid. 613 (2015)...................................................................76

**Constitutional Provisions**

U.S. Const. Amend. V...........................................................................23

U.S. Const. Amend. VI .................................................................. 42, 70

U.S. Const. Amend. XIV .......................................................................23

To the Honorable Justices of the Court of Appeals:

Appellant Thien Quoc Nguyen submits this Brief in support of the appeal:

## IV. Statement of the Case and Jurisdiction

This is an appeal of a *Judgment of Conviction by Jury* ("*Judgment*") and sentence under cause number 2012-2444-C1 for Aggravated Assault with a Deadly Weapon (habitual offender), for which Appellant was sentenced to 47 years in prison. (CR 88-89).[1]

On December 19, 2012, a grand jury indicted Appellant, alleging that on or about October 24, 2012, in McLennan County, Texas, Appellant "intentionally, knowingly, or recklessly cause bodily injury to Michael Jacob Willett" ("CW" or "Complaining Witness") by driving recklessly, causing (the CW) to crash his motorcycle, and (Appellant) did then and there use or exhibit a deadly weapon, to-wit: an automobile, during the commission of said assault." (CR 6). *See* Tex. Pen. Code § 22.02(a)(2) (2012).

The indictment also contains an enhancement paragraph in which the grand jury alleged that prior to the commission of the alleged offense, on August 23,

---

[1] The record on appeal consists of the Clerk's Record, which is cited by "CR" followed by the page number, and the Reporter's Record, which is cited as "RR" followed by the volume and page number, or the exhibit number (depicted as "SX" for State exhibits and "DX" for defense exhibits.

2004, in the Criminal District Court of Dallas County, Texas, in Cause Number F-0349278, Appellant was finally convicted of felony Aggravated Assault. (CR 6).

Finally, the indictment contains a habitual offender paragraph, in which the grand jury alleged that prior to the commission of the primary offense and the enhancement offense, on August 29, 1997, in Criminal District Court 1 of Tarrant County, Texas, in Cause Number 0636021, Appellant was finally convicted of felony Aggravated Assault. (CR 7).

After pleading "not guilty" to the primary charge in the indictment, a trial commenced, and on June 11, 2015, a jury found Appellant guilty of Aggravated Assault with a deadly weapon. (CR 75).

After Appellant pleaded true to the enhancement and habitual allegations in the indictment, and after hearing punishment evidence, the jury sentenced Appellant to 47 years in prison, or until Appellant is 84 years old. (CR 87-89); *see* Tex. Code Crim. Proc. Art. 37.07 § 2 (2015).

Appellant filed a timely notice of appeal. (CR 95); *see* Tex. Rule App. Proc. 26.2(a) (2015). Appellant filed a motion for new trial, which was denied without a hearing. (CR 101-111, 121). The trial court signed a Certification of Defendant's Right of Appeal, certifying that this is not a plea bargain case, and Appellant has the right of appeal. (CR 93). *See* Tex. Rule App. Proc. 25.2(a)(2) (2015). Under an order of the Supreme Court of Texas entered on June 23, 2015 (Misc. Docket

14

15-9114), this case was transferred to this Court from the Tenth Court of Appeals. *See* Tex. Gov. Code § 73.001. As a result, this Court has jurisdiction over this appeal.

## V. Statement Regarding Oral Argument

Although the facts and arguments are thoroughly presented in this Brief, if the Court's decisional process will be aided by oral argument, Appellant will be honored to present oral argument. *See* Tex. Rule App. Proc. 39 (2015).

## VI. Issues Presented

**Issue One:** The evidence is legally insufficient to prove that Appellant committed Aggravated Assault with a deadly weapon because no evidence was presented that Appellant intentionally, knowingly, or recklessly caused bodily injury to the CW by driving recklessly, causing the CW to crash his motorcycle while Appellant used an automobile as a deadly weapon.

**Issue Two:** Appellant's Sixth Amendment rights to a speedy trial were violated because: (1) the trial court denied Appellant the benefit of a speedy trial because although Appellant had been incarcerated since October 24, 2012 and he requested a speedy trial on July 22, 2014, trial did not commence until June 9, 2015; and (2) the State and trial court violated their duty, responsibility, and burden of bringing Appellant to trial within the time guaranteed by the Sixth Amendment.

**Issue Three:** The trial court erred and caused harm to Appellant because in its instructions to the jury, it failed to comply with Texas Code of Criminal Procedure Article 36.14 and the Sixth Amendment by committing the following errors: (1) submission of the option of the "reckless" mental state; (2) submission of the options of the "intentional" or "knowing" mental states; (3) submission of the deadly weapon theory; (4) failure to submit lesser-included offense options; and (5) submitting a misleading theory and commenting on causation and result.

**Issue Four:** By excusing five prospective jurors "for cause" because of alleged prior arrests, but without legal cause in fact as required by Texas Code of Criminal Procedure Article 35.16, the trial court erred and deprived Appellant of the right of a jury selected in under Article 35.16 and as required by the Sixth Amendment. A defendant's substantial rights are violated when a trial court breaches the same procedural statute multiple times.

**Issue Five:** The trial court committed reversible error and violated Appellant's Sixth Amendment rights to confront a material witness by refusing to permit Appellant to show the exceptional bias or interest of the complaining witness and admit evidence that the complaining witness had a pending civil suit against Appellant arising out of the same incident.

## VII. Facts

Because Appellant allegedly slowed his vehicle too quickly after passing the CW, who was riding on a motorcycle, the CW claimed he was forced to "lay down" his motorcycle on its side, which caused him to slide for 150 feet along the road. (RR3 41-42). Neither the CW nor the motorcycle collided with Appellant's vehicle. (RR3 28). The point on the roadway at which the motorcycle came to a stop is depicted in State's Exhibit 46. (RR3 29; RR6, SX-46). The motorcycle stopped its slide a short distance from the rear of Appellant's car, and the CW stopped about four feet behind the motorcycle. (RR3 44, 45, 109).

As a result of the slide, the CW incurred abrasions, cuts, and bruising to his left knee, abdomen, and elbow. (RR3 21, 24, 26-27; RR5, SX-19 through SX-34). Aside from the CW, three other persons who were also travelling in vehicles down the same road testified to what they believed they saw taking place in front of them and gave their opinions as to what they saw. (RR3 59-110). The descriptions of Appellant's operation of his vehicle are found at RR3, pages 18, 19-21, 37-42, 56-57, 64, 66, 69-72, 80, 84-85, 91, 92, 99-101, 103, 107-108, and 111. The conclusions of the witnesses about how Appellant operated his vehicle appear at RR3, pages 31, 65, 67-68, 96, and 104. The conclusions of the witnesses about how Appellant's vehicle allegedly turned into a deadly weapon are found at RR3,

18

pages 25, 64, 96, and 104-105. The conclusions of the witnesses about what the CW avoided by laying down his cycle appear at RR3, pages 56-57, and 102.

The incident occurred on October 24, 2012. (CR 6). Because Appellant received credit for time-served from October 24, 2012 to June 11, 2015 (the date sentence was imposed) (see Judgment, CR 88), it is clear that Appellant has been incarcerated since October 24, 2012.

The indictment was returned on December 19, 2012 (CR 6). The case was first set for trial on June 25, 2013. (CR 20, 21). The case was postponed to July 2, 2013, and then to October 8, 2013. (CR 22, 23). On July 22, 2014, Appellant requested a speedy trial. (CR 32). Trial did not commence until June 9, 2015. (RR2).

## VIII. Summary of the Arguments

In Issue One, Appellant will present a legal sufficiency argument. In Issue Two, Appellant will present a speedy trial argument. Issues Three, Four, and Five present arguments concerning improper jury selection and failure to allow Appellant the right to cross-examine a material witness. As to Issue One, Appellant will ask this Court to reverse the Judgment and sentence and enter a judgment of acquittal. As to Issue Two, Appellant will ask this Court to reverse the Judgment and sentence and dismiss the indictment with prejudice. As to Issues Three, Four, and Five, Appellant will ask this Court to reverse the Judgment and sentence and remand the case for a new trial.

## IX. Argument

1. **Issue One: The evidence is legally insufficient to prove that Appellant committed Aggravated Assault with a deadly weapon because no evidence was presented that Appellant intentionally, knowingly, or recklessly caused bodily injury to the CW by driving recklessly, causing the CW to crash his motorcycle while Appellant used an automobile as a deadly weapon.**

   ### i. Introduction

The facts of this case are simple and occurred over a span of a few minutes: through numerous witnesses, the State convinced a jury that Appellant drove his vehicle so poorly such that he somehow committed Aggravated Assault with a deadly weapon for road-rash injuries suffered by a motorcyclist (CW) who, travelling a short distance behind Appellant on the same roadway, purposely and recklessly laid his cycle over on its side.

However, the State failed to prove that Appellant intentionally, knowingly, or recklessly assaulted the CW using a deadly weapon. Not only did the State fail to prove that Appellant "assaulted" the CW (as defined by Tex. Pen. Code § 22.01 (2012)), but the State also failed to prove that that Appellant used his vehicle as a deadly weapon because: (1) the manner of Appellant's use of the vehicle or Appellant's intended use of the vehicle was not capable of causing death or serious bodily injury, and (2) the vehicle did not "facilitate the associated felony." Appellant prays that this Court will agree, and reverse and render a judgment of acquittal on the *Judgment of Conviction by Jury* and sentence.

21

Appellant will begin by discussing the standard of review on claims of legal insufficiency under *Jackson v. Virginia* and *Brooks*. Then, Appellant will show why the State failed to prove beyond a reasonable doubt that Appellant acted in a reckless manner, much less with intent or knowledge, and why this Court should reverse the conviction and sentence and render a judgment of acquittal. Appellant will also show why the deadly weapon finding is incorrect.

### ii. Standard of review on claims of legal insufficiency under *Jackson v. Virginia* and *Brooks*.

When reviewing a claim that the evidence is legally insufficient to support the conviction, an appellate court must determine whether "any *rational* trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (emphasis added), *quoting Jackson v. Virginia*, 443 U.S. 307, 316-319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Prible v. State*, 175 S.W.3d 724, 729-730 (Tex. Crim. App. 2005); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

The Due Process Clauses of the Fifth and Fourteenth Amendments require that a criminal conviction be supported not only by proof beyond a reasonable doubt regarding every essential element of a crime, but that such a determination be made by a *rational* trier of fact. U.S. Const. Amend. V; U.S. Const. Amend. XIV; *Laster*, 275 S.W.3d at 517; *Jackson*, 443 U.S. at 316-319. After giving

22

"proper deference" (and not *total* deference) to the trier of fact, an appellate court must "uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster*, 275 S.W.3d at 518, *citing Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992); *see Brooks*, *id.* at 902 n.1. Should an appellate court find that the verdict is contrary to the evidence presented at trial, the court is empowered to reverse the conviction and enter a judgment of acquittal. Tex. Code Crim. Proc. Art. 44.25 (2015); Tex. Rule App. Proc. 43.2(c) (2015).

Evidence is legally sufficient only if the State has affirmatively proven each of the essential elements of the offense. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Jackson*, 443 U.S. at 319; *Adames v. State*, 353 S.W.3d 854, 859-860 (Tex. Crim. App. 2011). In doing so, the reviewing court considers all evidence in the record of the trial, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). And, the State's case falls short if there is a material variance between the indictment allegations and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001); *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). This may occur when a statute specifies alternate

methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. *Id.*

### iii. Elements of Aggravated Assault

A person can commit Aggravated Assault in two ways: by committing an *assault* while *using or possessing a deadly weapon*, or by causing *serious bodily injury*. **Aggravated Assault with a deadly weapon** is a "nature of the conduct offense," which means that the appropriate culpable mental state definition as used in the trial court's charge to the jury are to guide the jury in determining whether the actor intended to use or exhibit the deadly weapon during the commission of the offense. *See Blount v. State*, 257 S.W.3d 712, 714-715 (Tex. Crim. App. 2008); *Johnson*, 364 S.W.3d at 298; *Guzman v. State*, 988 S.W.2d 884, 887 (Tex. App. Corpus Christi 1999, *no pet.*); Tex. Pen. Code § 22.02(a)(2) (2012). Thus, regardless of the outcome of such conduct, a person commits Aggravated Assault with a deadly weapon if the person intentionally, knowingly, or recklessly commits an *assault* while *using or possessing a deadly weapon. See Rivera v. State*, 271 S.W.3d 301, 304-305 (Tex. App. San Antonio 2008) (Defining Aggravated Assault with a Deadly Weapon).

On the other hand, **Aggravated Assault with serious bodily injury** is a "nature-of-the-result offense" because criminal liability is based upon the defendant's **intent to cause a specific result**, which is the serious bodily

injury. *See Hall v. State*, 145 S.W.3d 754, 758-759 (Tex. App. Texarkana 2004) (Aggravated Assault with Serious Bodily Injury is a nature-of-the-result offense) (emphasis added); *Rodriguez v. State*, 352 S.W.3d 548, 553-554 (Tex. App. Beaumont 2011) (same); *Sneed v. State*, 803 S.W.2d 833, 835 (Tex. App. Dallas 1991, *pet. ref.*) (The prohibition against assaulting a police officer proscribes a particular result, which is causing an injury to the officer, and is a result-oriented offense).

### iv. The State failed to prove beyond a reasonable doubt that Appellant acted in a reckless manner, much less with intent or knowledge

There is no evidence that Appellant "intentionally, knowingly, or recklessly caused bodily injury" to the CW "by driving recklessly," causing the CW to crash his motorcycle, while Appellant used his vehicle as a deadly weapon. Because aggravated Assault with a deadly weapon is a "nature of the conduct offense," which requires proving a defendant's culpable mental state, a review of the relevant mental states (mens rea) is appropriate.

Mens rea is a state of mind in which the defendant is said to have a "guilty mind." Elizabeth A. Martin, *Oxford Dictionary of Law*, Oxford University Press (2003). A person acts intentionally, or with intent, with respect to the nature of the defendant's conduct or to a result of the conduct when the defendant's conscious objective or desire is to engage in the conduct or cause the result. Tex. Pen. Code

25

§ 6.03(a) (2012); *see Brewer v. State*, 126 S.W.3d 295, 303 (Tex. App. Beaumont 2004) (Definition of the mens rea of "intentionally"). The mental state of intent is not used to apply to circumstances surrounding conduct, but concerns the person's perception of the existence of the circumstances, that is, knowledge, recklessness, or criminal negligence. *See* Searcy, *Pleading and Proving the Culpable Mental States Under the New Texas Penal Code*, 6 Am. J. Crim. Law 243, 244-247 (1978). There was no evidence presented that Appellant intended for the CW to slide on the ground, which caused Appellant's injuries.

Nor did Appellant act knowingly or with knowledge because Appellant was not aware of the nature of the conduct or that the circumstances exist; nor was Appellant aware that his conduct is reasonably certain to cause the result of the CW sliding on the ground. *See* Tex. Pen. Code § 6.03(b) (2012); *see also Duren v. State*, 87 S.W.3d 719, 724 (Tex. App. Texarkana 2002) (Defining "knowingly" in the context of a capital murder trial, where the evidence was sufficient to sustain the defendant's conviction because the child suffered such severe trauma to the head that a reasonable inference was that defendant knew his conduct was reasonably certain to cause death).

Nor did Appellant act recklessly, which is the mens rea alleged in the indictment (CR 6). A person acts recklessly, or is reckless with respect to circumstances surrounding his conduct or the result of his conduct when he is

26

aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. Tex. Pen. Code § 6.03(c) (2012); *see In re K.W.G.*, 953 S.W.2d 483, 487 (Tex. App. Texarkana 1997) (Defining "recklessly" in a case where a juvenile caused injuries to others by committing arson), *citing Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975).

### v. What occurred in this case is an accident and nothing more due to the careless operation of the motorcycle by the CW

Under the standards set forth above, the evidence was legally insufficient to prove that the CW was injured by any criminal conduct by Appellant. The evidence showed that as Appellant and the CW were each travelling eastbound on Lake Shore Drive, just west of Gholson Road in north Waco, Appellant pulled over to the right in front of the CW. Appellant was driving a car, and the CW was riding on a Ducati motorcycle. Appellant's lane change was apparently made very quickly after he had passed the CW and thus was described as a "cutting off" of the CW. But, contrary to the testimony of one witness, there was no "collision" between their vehicles. Appellant then drove quite a bit farther ahead of the CW. As both vehicles approached the intersection, Appellant's vehicle slowed to a stop well before reaching the intersection. The CW did not expect or anticipate Appellant's action of slowing, and therefore the CW underestimated how soon he would need to reduce his (the CW's) speed. As a result, the CW became frightened that he would crash into the rear of Appellant's vehicle. Thus, the CW chose to

27

"lay over" his motorcycle, assuming this would assist him in stopping more quickly, or at least avoid hitting Appellant's vehicle. The CW's choice was clearly not wise, as he should have properly applied his brakes. (RR3 176). The CW's maneuver resulted both in damage to the motorcycle and abrasive injuries to his body as he made contact with and slid along the roadway. The CW came to a position of rest several feet behind the Appellant's vehicle.

This sequence of events occurred primarily because the CW failed to operate the motorcycle in a safe manner. Nothing Appellant did created the "emergency" for the CW that caused the CW to lay down his motorcycle.

The timing of each driver's actions played a role in what occurred, but the primary reason for what occurred was the CW's failure to operate the motorcycle in a safe manner. The distances and rate of closure between Appellant's vehicle and the CW also played a role. In addition, the locations of each vehicle at the inception of the events also played a role. The lines of travel and the relative speeds of each vehicle were important factors as well, but again, none of the factors are as important as the CW's failure to operate the motorcycle in a safe manner.

As though Appellant were capable of sorcery with his vehicle, four witnesses, including the CW, concluded that Appellant manipulated these factors in such a way as to make it likely that the CW would suffer at least bodily injury as

a result of Appellant's conduct. But, to reach this conclusion, the State offered nothing more than the lay opinions of those persons about the causation of the injuries and the criminal culpability of Appellant's conduct. None of these witnesses were disinterested. Each described their own reasons for holding a grudge against Appellant. Bradford said that Appellant tried to "run" her over and was endangering everyone on the road. (RR3 63-64, 69-70). The Attaways were also upset with Appellant because he cut in front of their vehicle, forcing David Attaway to pull over to the median and back up to avoid a collision, almost losing control of his vehicle. (RR3 85, 88, 90, 99, 100). The State's evidence omitted or left vague all of the details about the underlying circumstances necessary to prove causation and culpability to amount to Aggravated Assault with a deadly weapon. There was no precision in the explanations or descriptions of how the event unfolded. In fact, outside the presence of the jury, this was acknowledged by the prosecutor ("There weren't any numbers given by the witnesses, there weren't any angles, there weren't any measurements."). (RR3 140). Even adopting the approach that this court should "...look to the totality of the circumstances surrounding the entire incident in order to determine if the jury could have satisfied itself that all of the essential elements had been proven beyond a reasonable doubt," such exercise is fruitless when the crucial factors are left to supposition. *See Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App. El Paso 2002, *no pet.*).

29

There was nothing inherently criminal about what Appellant did. He drove his vehicle down a public roadway, slowed as he approached a controlled intersection (perhaps also to make a right turn), and used functioning tail lights to warn the motorists travelling behind his car to apply their brakes. Perhaps to the surprise of the CW, Appellant got too close to the intersection before slowing and thus had to apply his brakes quickly, rather using than a more gradual and smooth process. None of the evidence presented suggests that Appellant recklessly operated his vehicle. Without better proof of the factors mentioned above and their interplay, no witness deciphered how to interpret Appellant's actions. Because this ambiguity was not removed, it was not possible for the jurors to rationally conclude "beyond a reasonable doubt" that Appellant committed Aggravated Assault with a deadly weapon. Thus, this was not a rational juror that convicted Appellant.

It is unjust to conclude that Appellant calculated where to place his vehicle and how hard to bring it to a stop with the hope of causing an injury to the CW. They were strangers who were merely using the same road to travel to their respective destinations. If Appellant really wanted to cause harm to a person riding a motorcycle, Appellant had a much easier and certain manner in which he could have done so. If, as the State argued (but failed to prove) that Appellant became enraged, it seems unlikely he had the time or thoughtfulness to plan an elaborate

scenario designed to cover up the extent of his rage or hopes to injure the CW. Moreover, merely stopping his vehicle as Appellant did would never by itself cause injury or an accident. The injuries caused to the CW depended on several other factors over which Appellant had no control.

### vi. Appellant's actions were at worst negligent, and not committed recklessly, intentionally, or knowingly

Appellant's actions were at worst **negligent**, and not committed recklessly, intentionally, or knowingly. The underlying basis of reckless conduct is a *conscious disregard* of the risk created by the defendant's conduct. *See Lewis*, 529 S.W.2d at 553. As the Court of Criminal Appeals held, *reckless* conduct differs from *criminally negligent* conduct as follows:

> (**reckless conduct** involves) ***conscious risk creation***, that is, the actor is *aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk...Criminal negligence...*involves ***inattentive risk creation***, that is, the actor *ought to be aware of the risk surrounding his conduct or the results thereof.* At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk.

*See Lewis*, 529 S.W.2d at 553 (emphasis supplied); *see also Aliff v. State*, 627 S.W.2d 166, 171 (Tex. Crim. App. 1982) (difference between recklessness and criminally negligent actions) and *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005) (same). Another factor a reviewing court must consider when it determines whether a person acted recklessly is whether it is clear from the

31

evidence that the defendant *perceived the risk in her actions*.  *See Mendieta v. State*, 706 S.W.2d 651, 653 (Tex. Crim. App. 1986) (A defendant who swings a knife to keep another away acts recklessly because the act shows a perception of the risk the defendant was creating); *cf. Isbell v. State*, 681 S.W.2d 640, 643 (Tex. App. Houston [14th Dist.] 1984, *pet. ref.*) (Trial court erred when it refused to provide jury instruction for criminally negligent homicide because the husband was killed due to the weapon discharging during a struggle between the husband and the defendant while the husband tried to disarm the defendant in order to prevent her suicide attempt).

A good example of reckless conduct is discussed in *Robertson v. State*, 109 S.W.3d 13 (Tex. App. El Paso 2003, *no pet.*).  Here, while driving, the defendant had a grand mal seizure, causing his vehicle to drift off the road and crash into the living room of a house, crushing to death a nine-year-old child who was resting in the living room of the house. *Id.* at 14.  The court of appeals found that the record was "abundantly clear" that the defendant should not have been driving because: (1) the defendant had a history of past automobile accidents caused by his susceptibility to seizures; (2) there was inferential evidence that the defendant avoided or misrepresented his medical condition on his driver's license renewal application, which tends to show conscious disregard of the danger to other motorists and the public because the defendant knew that he could lose physical

control over his body; and (3) the defendant's decision to drive on the day of the accident "was a conscious choice in disregard of the unjustifiable danger his driving posed." *Id.* at 21. As a result, the court of appeals affirmed the defendant's conviction for Manslaughter. *Id.*

Therefore, in *Robertson*, the defendant: (1) consciously created a risk that was proved by the attendant circumstances; (2) perceived the risk in his actions; and (3) created a risk that was of such a nature and degree that its disregard constituted a *gross deviation* from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the person's standpoint. *See Lewis*, 529 S.W.2d at 553; *Aliff*, 627 S.W.2d at 171; *Stadt*, 182 S.W.3d at 364; and Tex. Pen. Code § 6.03(c) (2012).

On the other hand, the mens rea of criminal negligence is of a nature and degree that the failure to perceive the risk constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the person's viewpoint. Tex. Pen. Code § 6.03(d) (2012); *Montgomery v. State*, 369 S.W.3d 188, 192-193 (Tex. Crim. App. 2012) (Listing what the State must prove to show criminal negligence); *Graham v. State*, 657 S.W.2d 99, 101 (Tex. Crim. App. 1983) (Discussion of the requirements to prove criminal negligence). The underlying factor of criminal negligence is the failure of the person to perceive the risk created by her conduct. *See Ybarra v. State*, 890

S.W.2d 98, 110 (Tex. App. San Antonio 1994, *pet. ref.*) (The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the person's standpoint) and *Thomas v. State*, 699 S.W.2d 845, 850 (Tex. Crim. App. 1985) (Criminal negligence involves inattentive risk creation where the person ought to be aware of the risk surrounding her conduct or the results of her conduct).

There was no rational basis from which to infer the required culpable mental state existed in Appellant's mind amounted to recklessness as opposed to mere negligence. "As applied to mens rea (and every other element), the force of the presumption of innocence is measured by the force of the showing needed to overcome it, which is proof beyond a reasonable doubt that a defendant's state of mind was in fact what the charge states." *Clark v. Arizona*, 548 U.S. 735, 766 (2006); *Louis v. State*, 329 S.W.3d 260, 269 (Tex. App. Texarkana 2010), *affirmed*, 393 S.W.3d 246 (Tex. Crim. App. 2012) (deference to jury's finding as to culpable mental state did not require acceptance thereof on appeal).

Moreover, the causative link or cause-effect relationship between what Appellant did and the actual mechanism of the injury to the CW does not exist. In a recent case presenting a claim that operation of a vehicle in front of a motorcycle caused the deadly injury the motorcyclist ultimately suffered by reason his loss of

control of the motorcycle during a supposed evasive action, the Tenth Court of Appeals stated, "[W]ithout a number of unreasonable assumptions and stacked inferences, nothing in [the proof] creates a fact question as to whether or not [car driver's] actions were negligent or actually caused [the motorcyclist's] injury." *Northcutt v. City of Hearne*, No. 10-14-00012-CV, 2015 Tex. App. LEXIS 7932, at *9-11 (Tex. App. Waco July 30, 2015, *pet. filed*) (mem. op.). It added that the cyclist's "complaints about [the car driver's] actions seem to be more properly classified as a condition that made the accident possible, rather than the actual cause of the accident itself." *Northcutt*, *id*. Highly pertinent to Appellant's case, the Tenth Court of Appeals found that causation "cannot be established by mere conjecture, guess, or speculation." *Id*. at *7.

Here, the CW was not injured by any act or omission by Appellant. The CW's decision to "lay down" his motorcycle because he was not operating it safely was the sole cause of the CW's injuries. A "defendant cannot be convicted if the additional cause, other than defendant's conduct, is clearly sufficient by itself to produce the result, and the defendant's conduct by itself is clearly insufficient to produce the result." *Bell v. State*, 169 S.W.3d 384, 395 (Tex. App. Fort Worth 2005, *pet. ref.*).

**vii.** **The evidence was legally insufficient to show that Appellant used his vehicle as a deadly weapon because: (1) the manner of Appellant's use of the vehicle or Appellant's intended use of the vehicle was not capable of causing death or serious bodily injury, and (2) the vehicle did not "facilitate the associated felony."**

A deadly weapon can be a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. Tex. Pen. Code § 1.07(a)(17)(A) (2012). A deadly weapon can also be "...anything that in the **manner of its use or intended use** is *capable* of causing death or serious bodily injury." Tex. Pen. Code § 1.07(a)(17)(B) (2012); *See Jefferson v. State*, 974 S.W.2d 887, 892 (Tex. App. Austin 1998). For instance, hands are not deadly weapons *per se* but can become deadly weapons in the manner of their use depending upon the evidence. *Id.*, *see also Turner v. State*, 664 S.W.2d 86, 89-90 (Tex. Crim. App. 1983).

Like one's hands, a vehicle is not a deadly weapon *per se*. However, a vehicle can become a deadly weapon if it is used in a manner capable of causing death or serious bodily injury. Tex. Pen. Code § 1.07(a)(17)(B) (2012); *Ray v. State*, 880 S.W.2d 795, 796 (Tex. App. Houston [1st Dist.] 1994, *no pet.*); *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992); *Ray v. State*, 880 S.W.2d 795 (Tex. App. Houston [1st Dist.] 1994) (an intoxicated person could be found to have used his vehicle in such a manner so as to render it a deadly weapon).

36

For instance, in *English v. State*, 828 S.W.2d 33 (Tex. App. Tyler 1991, *pet. ref.*), the defendant's vehicle collided with a vehicle operated by the victim, and the victim was killed. *Id.* at 34. Both drivers were legally intoxicated at the time of the accident: Appellant's blood contained 0.33 grams of alcohol per 100 milliliters, and the victim's contained 0.20 grams of alcohol per 100 milliliters. *Id.* After the jury found that the defendant "...used or exhibited a deadly weapon, (a motor vehicle) during the commission of the offense," defendant argued that he did not use the vehicle in a manner as to render it a deadly weapon because there is no evidence that: (1) he ran a red light, (2) he was speeding at the time of, or immediately before, the collision, or (3) that he otherwise operated the vehicle in a reckless manner. The State argued that because: (1) the defendant had a blood alcohol level of 0.33, (2) persons with that level of intoxication would be "near a comatose state," and (3) the vehicle weighed 2,800 pounds, these factors alone made the vehicle capable of "causing serious bodily injury or death to other individuals." *Id.* at 34-35. However, using the legal sufficiency holding in *Jackson*, 443 U.S. 307, the court of appeals concluded that no rational jury could have found beyond a reasonable doubt that the vehicle driven by Appellant while intoxicated was "in the manner of its use or intended use . . . capable of causing death or serious bodily injury." The court found that there must be "some special

relationship between the [vehicle] by reason of the manner of its use and the "associated felony offense" for which the defendant was tried." *Id*. at 38.

The *English* court did not deny that a motor vehicle operated by an intoxicated driver instantly becomes an instrument **capable** of inflicting death or serious bodily injury on any person, who by chance comes within its path. *Id*. at 38 (emphasis supplied). However, although evidence of the defendant's intoxication while driving his vehicle is undisputed, the evidence shows only that a collision occurred in an intersection at which the flow of traffic in each direction is controlled by signal lights. *Id*. at 38-39. There was no evidence showing that the other driver had the right-of-way, that the Appellant ran a red light, or was operating his vehicle in a reckless manner. *Id*. Applying the standard of review in *Jackson*, when looking at the evidence in the light most favorable to the finding, the court found that the jury's finding that the defendant exhibited or used a deadly weapon *during the commission of the felony DWI* is **not** a rational finding. *Id*. at 39.

The *English* court's holding leads to the final part of this analysis: a deadly weapon must actually facilitate the associated felony. *Hill v. State*, 913 S.W.2d 581, 583-584 (Tex. Crim. App. 1996) (For an affirmative finding of the use of deadly weapon to stand, the State must prove beyond a reasonable doubt that the defendant employed or used a deadly weapon so as to facilitate the associated

felony.). In *Hill*, the defendants were charged with injury to a child under Texas Penal Code § 22.04.  It was alleged that the defendants caused their son to starve to death by using chains, belts and locks in order to prevent the child from obtaining food, and that these devices were used as deadly weapons. The Court of Criminal Appeals found that because the defendants used the devices to restrain the child in order to deprive him of food (the injury to a child), the defendants committed an "affirmative, conscious and intentional act." *Id*. at 583.

In other words, in *Hill*, the deadly weapons (chains, belts and locks) facilitated the associated felony (injury to a child). But in Appellant's case, the vehicle did not "facilitate" any "associated felony."  What occurred was at worst a misdemeanor assault that was elevated to a felony only because it was alleged that Appellant used his vehicle to commit the assault.  *See* Tex. Pen. Code § 22.02(a)(2) (2012) and *Rivera*, 271 S.W.3d at 304-305.  Thus, neither the deadly weapon finding nor the felony conviction should stand.  *See also Sheridan v. State*, 950 S.W.2d 755 (Tex. App. Fort Worth 1997) (An accident in a vehicle could not have facilitated a failure to stop and render aid because the "gravamen of the offense relates to the actor's failure to stop and render reasonable assistance after such an accident."); *Thornton v. State*, 377 S.W.3d 814, 818 (Tex. App. Amarillo 2012), *vacated on another ground*, No. PD-1517-12, 2013 Tex. Crim. App. Unpub. LEXIS 48, 2013 WL 105874 (Tex. Crim. App. Jan. 9, 2013) (unpublished)

39

(meaning of statutory term describing conduct must fit what the defendant actually did before it can lead to a rational finding of guilt); *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009) (Whether a vehicle is used as a deadly weapon is determined by a two-prong evaluation: (1) the manner in which the defendant used the vehicle during the crime and (2) whether, during the commission of the crime, the vehicle was capable of causing death or serious bodily injury). In Appellant's case, Appellant did not use his vehicle in a manner that could have led a rational trier of fact to conclude that with respect to circumstances surrounding what occurred on that street, Appellant was aware of but consciously disregarded a substantial and unjustifiable risk that the circumstances exist or the result will occur. *See* Tex. Pen. Code § 6.03(c) (2012). The capabilities of the vehicle must be judged strictly according to its actual use in this case. *See Byrd v. State*, 336 S.W.3d 242, 258 (Tex. Crim. App. 2011) (to avoid failure of proof, State must prove the conduct as alleged, except for minor discrepancies in things such as spelling or numerical digits); *see also Cates v. State*, 102 S.W.3d 735, 739 (Tex. Crim. App. 2003) (evidence insufficient because it failed to show vehicle was "driven in a deadly manner").

### viii. Public policy considerations

The verdict reached by the jury represents a dangerous proposition: if this Court allows the conviction to stand, violations of driving rules or expected norms

governing the operation of motor vehicles could very easily be routinely charged as Aggravated Assault with a deadly weapon, a felony of the second degree. Given the number of similar incidents that occur regularly in Texas and elsewhere, it would quickly prove impossible to justly or uniformly apply the law concerning Aggravated Assault to these situations. Some forms of driving are aggressive in nature, and although such forms should be frowned upon, they should not be criminalized as a second degree felony. Finally, the vast majority of incidents such as what occurred between Appellant and the CW represent only danger and not felonious criminal conduct.

### ix. Conclusion

The evidence is legally insufficient to prove that Appellant committed Aggravated Assault with a deadly weapon because no evidence was presented that Appellant intentionally, knowingly, or recklessly caused bodily injury to the CW by driving recklessly, causing the CW to crash his motorcycle while Appellant used an automobile as a deadly weapon. As a result, Appellant asks this Court to reverse the *Judgment* and sentence and enter a judgment of acquittal. In the alternative, Appellant asks this Court to reverse the *Judgment* and sentence, and enter a judgment of conviction for misdemeanor assault, and remand this case back to the trial court for a new sentencing hearing.

**2. Issue Two: Appellant's Sixth Amendment rights to a speedy trial were violated because: (1) the trial court denied Appellant the benefit of a speedy trial because although Appellant had been incarcerated since October 24, 2012 and he requested a speedy trial on July 22, 2014, trial did not commence until June 9, 2015; and (2) the State and trial court violated their duty, responsibility, and burden of bringing Appellant to trial within the time guaranteed by the Sixth Amendment.**

### i. Argument

The Sixth Amendment provides in part, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972). This right is made applicable to prosecutions in Texas by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). If a violation of the speedy trial right is established, the **only possible remedy is dismissal of the prosecution.** *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) (emphasis supplied).

When faced with a speedy trial claim, courts must apply the four factors of the *Barker* balancing-test with "common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008) (en banc). The four factors of the *Barker* balancing-test are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the

42

defendant. *Barker*, 407 U.S. at 530. While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice. *Cantu*, 253 S.W.3d at 280. The defendant's burden of proof on the two factors varies inversely with the State's degree of culpability. *Id*. The factors must be considered together along with other relevant circumstances and the court must engage in a difficult and sensitive balancing process in each case. *Id*. at 281.

There is a bifurcated review of a trial court's ruling on a speedy trial claim: reviewing courts apply the abuse of discretion standard for facts, and the de novo standard for issues of law. *Id*. at 282. Thus, this Court should independently weigh and balance the four *Barker* factors, but presumes the trial court resolved disputed fact issues in a manner that supports its ruling. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

The State and the trial court had the burden of providing a speedy trial, particularly once Appellant demanded a speedy trial on July 22, 2014. *See Barker*, 407 U.S. at 527 ("A defendant has no duty to bring himself to trial; the State has that duty..."). "Affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett v. United States*, 505 U.S. 647, 655 (1992). "Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to

gamble with the interests of criminal suspects assigned a low prosecutorial priority." *Id.* at 657. "[W]hen the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *Id.* at 658 (citations omitted). It seems highly unlikely that Appellant was tried as soon as was reasonably possible. The Government did not "move with the dispatch that [was] appropriate to assure him an early and proper disposition of the charges against him." *Cf. United States v. Marion*, 404 U.S. 307, 313 (1971).

Appellant did more than merely announce "ready" for trial: he asserted his right to a speedy trial. *See Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013) ("[Defendant] claims that announcing ready was such a demand. However, this is not a demand for a speedy trial; instead, it merely asserts that he could go to trial at that moment should the State push for it. A speedy-trial demand should be, at the very least, unambiguous."). And, Appellant's assertion of his right to a speedy trial is entitled to strong evidentiary weight in determining whether he has been deprived of his right. *Barker*, 407 U.S. at 531-532. Failure to assert the right in a timely and persistent manner will make it difficult for a defendant to provide that he was denied a speedy trial. *Id.*at 529.

Under the first *Barker* factor, the length of the delay, Appellant's rights were clearly violated.  Appellant was in jail for 32 months pending trial (October 24,

44

2012 until June 9, 2015), and nearly 11 months after asserting his right to a speedy trial (July 22, 2014 until June 9, 2015). (CR 32 and RR2). In *United States v. MacDonald*, 456 U.S. 1 (1982), the Supreme Court made it clear that the primary purpose behind the Sixth Amendment right to a speedy trial is **not** to prevent prejudice to the defense caused by the passage of time, but instead to minimize the possibility of lengthy incarceration prior to trial and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. *Id*. at 7-8. Here, 32 months of total pretrial incarceration and nearly 11 months following the assertion of the right are clearly oppressive. Thus, the first *Barker* factor weighs heavily in favor of Appellant.

Under the second *Barker* factor, the reason for the delay, the record is silent. When a court assesses this factor, different weights must be assigned to different reasons. For instance, a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. *Barker*, 407 U.S. at 531. On the other hand, a more "neutral" reason such as negligence or overcrowded courts should be weighted less heavily, and a valid reason, such as a missing witness, may justify an appropriate delay. *Id*.

Under the third *Barker* factor, Appellant's assertion of the right, Appellant clearly asserted the right on July 22, 2014. (CR 32). Appellant then requested a priority trial setting on December 29, 2014, and trial was set for February 3, 2015,

but did not commence until June 9, 2015. (CR 33). The defendant's assertion of his right to a speedy trial is entitled to strong evidentiary weight in determining whether he has been deprived of his right. *Barker*, 407 U.S. at 531-32. Thus, the third *Barker* factor weighs heavily in favor of Appellant.

Under the fourth and final *Barker* factor, prejudice to Appellant, this Court should assess this factor in light of the interest a speedy trial is designed to protect. *Barker*, 407 U.S. at 532. These interests are: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id*. Of these three, the most serious is limiting the possibility that the defense will be impaired, because the inability of the defendant to prepare a defense skews the fairness of the criminal justice system. *Id*. A defendant has the burden to make some showing of prejudice although a showing of actual prejudice is not required. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999) (en banc).

With regards to this final factor, Appellant first notes that even if he had failed to raise the speedy trial claim in the trial court, this does not constitute a waiver. *See Henson v. State*, 407 S.W.3d 764, 768 (Tex. Crim. App. 2013); *see also McKinney v. State*, 505 S.W.2d 536 (Tex. Crim. App. 1974) (When a speedy-trial complaint is raised for the first time on appeal, the issue is not waived, but constitutes only one factor to be considered in a *Barker* analysis.); *Archie v. State*,

511 S.W.2d 942 (Tex. Crim. App. 1974) (same); *Easley v. State*, 564 S.W.2d 742 (Tex. Crim. App. 1978) (same). Appellant raised the speedy trial claim in the trial court, but there was no hearing conducted to determine whether Appellant's defense was impaired. Thus, the record is silent on this issue.

In balancing the four *Barker* factors, factors one and three (the length of the delay and Appellant's assertion of the right) weigh heavily in favor of Appellant. As for factors two and four (the reason for the delay and prejudice to Appellant), the reasons are not clear because the record is silent, so neither Appellant nor the State win on these factors.

However, because the State and the trial court had the burden of providing a speedy trial, particularly once Appellant demanded a speedy trial on July 22, 2014, *see Barker*, 407 U.S. at 527, and "[A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim" under *Doggett*, 505 U.S. at 655, Appellant asks this Court to weigh the factors in his favor, especially considering that the "score" on the *Barker* factors is Appellant 2, State 0, with two "ties."

### ii. Conclusion

Appellant's Sixth Amendment rights to a speedy trial were violated because: (1) the trial court denied Appellant the benefit of a speedy trial because although Appellant had been incarcerated since October 24, 2012 and he requested a speedy trial on July 22, 2014, trial did not commence until June 9, 2015; and (2) the State

and trial court violated their duty, responsibility, and burden of bringing Appellant to trial within the time guaranteed by the Sixth Amendment. When considering the *Barker* factors, Appellant has established a violation of his right to a speedy trial, so Appellant asks this Court to reverse the Judgment and sentence, and dismiss the case with prejudice.

**3. Issue Three: The trial court erred and caused harm to Appellant because in its instructions to the jury, it failed to comply with Texas Code of Criminal Procedure Article 36.14 and the Sixth Amendment by committing the following errors: (1) submission of the option of the "reckless" mental state; (2) submission of the options of the "intentional" or "knowing" mental states; (3) submission of the deadly weapon theory; (4) failure to submit lesser-included offense options; and (5) submitting a misleading theory and commenting on causation and result.**

As outlined below, the instructions submitted to the jury in the court's charge were erroneous and harmful in several respects. Under Texas Code of Criminal Procedure Article 36.14, the trial court must set forth the applicable law in the form of a written charge that: (1) is neutral in tone; (2) does not sum up the testimony in any manner; (3) does not express any opinion as to the weight to be given the evidence in the case; (4) does not discuss any of the facts adduced in the case. Tex. Code Crim. Proc. Art. 36.14 (2015); *see Ward v. State*, 72 S.W.3d 413, 418-419 (Tex. App. Fort Worth 2002). The trial court erred with respect to Article 36.14 and the Sixth Amendment in five different manners.

### i. Error in submission of the option of the "reckless" mental state

The indictment accused Appellant of intentionally, knowingly, or recklessly causing bodily injury to another by "driving recklessly." (CR 6). It did not allege what he was driving (*e.g.*, construction equipment, vehicle, etc.) or how his conduct would constitute recklessness. The indictment thus did not comply with Texas Code of Criminal Procedure Article 21.15, which provides: "Whenever recklessness enters into or is a part or element of any offense, or it is charged that

49

the accused acted recklessly...in the commission of an offense, the...indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness..., and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly..." Tex. Code Crim. Proc. Art. 21.15 (2015). Thus, the trial court erred in submitting that theory of assault to the jury, as it was not supported by the essential pleading. The inclusion of "recklessly" as one of the culpable mental states in the indictment was surplusage when Article 21.15 is taken into account. There should be no "variance between the indictment and the jury instruction such that the instruction seemingly broadens the basis upon which the State can obtain a conviction." *Fisher v. State*, 887 S.W.2d 49, 57 (Tex. Crim. App. 1994).

Appellant points out two issues regarding this argument. First, this case did not involve use of "recklessly" in the jury charge as part of an unpled lesser-included offense or afterthought. This distinguishes the holdings in *Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012) and *Ramos v. State,* 407 S.W.3d 265, 272 (Tex. Crim. App. 2013) (Keller, P.J., dissenting) (there was no variance between pleading and proof because recklessness was not alleged in the murder indictment).

Second, this complaint is not about the sufficiency of the indictment to invoke the jurisdiction of the court concerning a theory of recklessness because

such a complaint is barred by *Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990). While Appellant challenges his conviction on the basis of a defective charging instrument, his claim is distinct from that alleged by *Studer* and is not about a "defect" as provided in the 1985 amendment to Art. 5, § 12 of the Texas Constitution. The problem here is not one of a lack of substance in the indictment under Texas Code of Criminal Procedure Article 27.08. It arises because recklessness was not properly alleged due to the fact that recklessness can be alleged only in the manner mandated by Article 21.15. The problem is thus not a partial omission of an element for jurisdictional purposes, but rather that the indictment could not support or authorize a verdict or judgment based on reckless conduct because it fails to effectively allege recklessness as mandated by Article 21.15.

To allege recklessness, the indictment must state with reasonable certainty the act or acts relied upon to constitute what made the conduct reckless. *Id*. The trial court cannot on its own cure such an omission in the State's pleading by submitting language in the jury charge to the jury as it did here. When it does so, the verdict is void. *See State v. Rodriguez*, 339 S.W.3d 680, 684-685 (Tex. Crim. App. 2011) and *Reed v. State*, 117 S.W.3d 260 (Tex. Crim. App. 2003) ("when recklessness is left out of the indictment for the charged offense, and no lesser included offense is submitted to the jury...then Article 21.15 precludes the

51

inclusion of recklessness or criminal negligence in the jury instructions for the charged offense . . . we are saying that either the indictment should have accurately listed the applicable mental states or the charge should have limited the jury instructions to the mental states alleged in the indictment"); *see also Wilson v. State*, 625 S.W.2d 331 (Tex. Crim. App. 1981).

Under *Malik v. State*, 953 S.W.2d 234, 239-240 (Tex. Crim. App. 1997), issues pertaining to the sufficiency of the evidence are not measured by the jury charge actually given, but by the elements of the offense as defined by the hypothetically correct jury charge for the case, which is one that: (1) accurately sets out the law, (2) is authorized by the indictment, (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and (4) adequately describes the particular offense for which the defendant was tried. In the case before this Court, the "reckless" theory submitted in the charge was not authorized by the indictment. Its inclusion created a tangible danger that the jury's decision would become irrational because based on a law not properly part of the case. *See Hollander v. State,* 414 S.W.3d 746, 753 (Tex. Crim. App. 2013) (Where: (1) a jury was not told that it had to believe the evidence substantiating the presumption beyond a reasonable doubt before it could convict the defendant; (2) neither the balance of the jury charge nor the conduct of the parties served to correct the deficiency; and (3) the facts giving rise to the

presumption were hotly contested, the error in the jury charge both affected the basis of the case and deprived the defendant of a fair and impartial trial.). As was the case in *Hollander*, in the case before this Court, (1) the "reckless" theory submitted in the charge was not authorized by the indictment; (2) neither the balance of the jury charge nor the conduct of the parties served to correct the deficiency; and (3) the issue of whether Appellant acted recklessly was hotly contested, so the error in the jury charge both affected the basis of the case and deprived Appellant of a fair and impartial trial.

Further, it is clear that there was a lesser likelihood "that a properly instructed jury would have found the predicate facts to the requisite level of confidence." *Id*. at 751. While it is not possible to know upon which of the three alternatives they were given the jurors actually cast their votes, plainly the evidence of an intentional or knowing mental state was weaker and those alternatives something more difficult for the State to prove than a reckless mental state (particularly on the facts of this case).

Put another way, the decision of the petit jury must conform to the decision of the grand jury because otherwise the indictment process offers no protection or purpose. The judge and the petit jury must not effectively act as the grand jury. Indeed, they might be usurping the role of the prosecutor in choosing what specific crime to try, or the legal theories to be addressed during trial. *See Stirone v. United*

*States*, 361 U.S. 212, 218-19 (1960) ("The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment. Here, ...we cannot know whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with. Yet because of the court's admission of evidence and under its charge this might have been the basis upon which the trial jury convicted petitioner. If so, he was convicted on a charge the grand jury never made against him. This was fatal error."). *Stirone* was more recently discussed and reaffirmed in *United States v. Miller*, 471 U.S. 130, 138-39 (1985). If Texas Code of Criminal Procedure Article 1.14(b) is interpreted to mean anything different, then it is unconstitutional not only under the Fourteenth Amendment, but also under Texas Constitution Article 1, §§ 10, 19, and 29.

### ii. Error in submission of the options of the "intentional" or "knowing" mental states

The trial court also erred in permitting the State to use its chosen, narrowed description of Appellant's conduct to support a finding that Appellant either intended to cause the bodily injury suffered by the CW or that Appellant's manner of driving made it reasonably certain that such injury would occur. *See Geick v. State*, 349 S.W.3d 542, 548 (Tex. Crim. App. 2011) (The defendant's conviction for theft by deception was overturned because the State unnecessarily pled that the theft was by deception but provided no proof of deception. Texas Penal Code §

54

31.03 did not force the State to make any choices, so the State used statutory definitions to allege a more narrow offense than was required.). Thus, the State should not be allowed to contradict its pleading by recharacterizing the nature of Appellant's conduct or the culpability of Appellant's mental state. Instead, the State should be limited by (or to proof of) the more restrictive, specific adjective it used in identifying the cause of the accusation.

This charge error also goes to the very basis of the case, deprived Appellant of the valuable right to a fair jury charge under the Sixth Amendment, vitally affected Appellant's principal defensive theory, and thus should result in reversal. *See Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (*op. on rehearing*) (reviewing courts may reverse for error in the jury charge if: (1) the error, having been properly objected to at trial, is harmful and therefore "calculated to injure the rights of the defendant"; or (2) the error, even though not timely objected to, is so egregious and creates such harm that it deprives the accused of a "fair and impartial trial."). It is axiomatic that due process does not permit one to be tried, convicted or sentenced for a crime with which he has not been charged or about which he has not been properly notified. *Schmuck v. United States*, 489 U.S. 705, 718-719 (1989); *DeJonge v. Oregon*, 299 U.S. 353, 362 (1937) ("Conviction upon a charge not made would be sheer denial of due process."). While particular forms of driving a vehicle might be intended to cause (or are sufficiently aberrant

to involve near certainty in causing) a dangerous collision with other vehicles sharing the roadway, only reckless driving was alleged in this case. And driving recklessly is necessarily a lesser degree or likelihood of danger or harm.

It makes no difference if some act of Appellant of a more dangerous type may have been shown by the evidence. Such evidence was not admissible or relevant to show anything other than recklessness. To be relevant, evidence must tend to prove a fact of consequence in determining the action, that is an element of the crime *as pled*. *See* Tex. Rule Evid. 401(b) (2015). While the definitions of "intentional," "knowing," and "reckless" may overlap, they are nevertheless distinct statutory alternatives regarding the culpable mental state element of Aggravated Assault. Proof of one does not allow conviction under another alternative that might have been chosen for inclusion in the indictment, but was not. *Cada v. State*, 334 S.W.3d 766, 773-774 (2011).

In short, the reckless driving of a vehicle, though dangerous or risky in its own way, cannot by definition involve an intent to cause harm or knowledge that harm is reasonably certain to result. Proof of reckless driving does not support a finding of intent or recognition of reasonable certainty that bodily injury to another will occur.

### iii. Error in submission of the deadly weapon theory

Third, despite the indictment's description of Appellant's conduct as reckless driving, by its charge the court nevertheless permitted the jury to find that Appellant intended to use his vehicle in such a way as to cause serious bodily injury or death to the CW. When one is merely reckless with respect to natural, foreseeable results embodied in his conduct or acts, it cannot be said that he held a specific intent to cause a particular result. As explained in detail above, recklessness involves a disregard of a risk, and not a deliberate attempt to make the risk a reality. Thus, the court also erred in submitting any issue about Appellant's *intended* (but unexecuted) manner of use of the vehicle. The definition of "deadly weapon" in the charge should instead have been limited to the capability of the vehicle to cause death or serious bodily injury *in its manner of use*, rather than encouraging jurors to speculate about any further or different use intended or contemplated by Appellant. After taking into account that no serious bodily injury occurred, the jury could have properly evaluated whether anything they heard about the actual use of the vehicle was sufficient to convert his vehicle into a deadly weapon. This charge error also goes to the very basis of the case, deprived Appellant of the valuable right to a fair jury charge under the Sixth Amendment, vitally affected Appellant's principal defensive theory, and thus should result in reversal. *See Almanza*, 686 S.W.2d at 172.

### iv. Error in failure to submit lesser-included offense options

No serious bodily injury occurred in this case. "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Pen. Code § 1.07(a)(46) (2012); *Stuhler v. State*, 218 S.W.3d 706, 714 (Tex. Crim. App. 2007) (The risk of causing permanent impairment is determined based on injury "as it was inflicted, not after the effects had been ameliorated or exacerbated by other actors such as medical treatment.").

Thus, Appellant was entitled to have the jury consider whether he was guilty only of misdemeanor assault. *Bridges v. State*, 389 S.W.3d 508, 512-513 (Tex. App. Houston [14th Dist.] 2012) (The defendant was convicted of Aggravated Assault with a deadly weapon but was entitled to a jury instruction of the lesser-included offense of Assault by threat under Tex. Pen. Code § 22.01(a)(2) because the defendant contended that he did not have a knife during a physical altercation with his wife). Since the State did not charge an Assault by threat under Texas Penal Code § 22.01(a)(2), it was not entitled to base a conviction for Aggravated Assault on anything other than the more limited bodily injury that the CW suffered, with its strategy further troubled by the fact that the CW's laying down of his motorcycle (and thus the nature of the injury he suffered) was caused by the CW's chosen conduct. This was not a case where intent to cause a more serious injury might

logically have been inferred from the injury actually suffered by reason of the use of an instrument. *Cf. Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008).

Regardless of the opinions of the witnesses who claimed that Appellant's driving influenced the CW's decision, it was still the CW who chose to create the risk and indeed, the virtual certainty of an injury associated with "laying down" his motorcycle rather than attempting to avoid a collision with Appellant's vehicle in another way, such as simply braking or by keeping a proper lookout. There was no evidence that Appellant should be charged with constructive knowledge of, or the ability to perceive, that the CW would make the choice that he did. *Cf. McKay v. State*, ___ S.W.3d ___, No. PD-1133-14, 2015 Tex. Crim. App. LEXIS 1171, *8 (Tex. Crim. App. Nov. 4, 2015) ("Although we assume that the jury resolved any conflicting inferences in favor of the prosecution, there was no such conflicting inference in this case at all"). The lack of wisdom in and necessity of the CW's action militates against inferring recognition of this risk in Appellant's mind. (RR3 176).

Even when this Court takes the lay opinions of the witnesses as true, and it may be assumed that Appellant stopped his vehicle too fast and too close to the CW and thus created the need for evasive action by the CW, because Appellant never caused his vehicle to collide with the motorcycle (or even close to it), it

cannot logically be said Appellant's use of his vehicle was itself or alone capable of injuring the CW. There was no proof that the vehicle was capable of causing injury to the CW. Accordingly, the jury should have received the option of finding Appellant guilty of simple assault, and the trial court erred by refusing Appellant's request. (RR3 231-232). The trial court clearly shared the prosecutor's mistaken belief (which is clear when the prosecuted was permitted to include in his argument to the jury) that it was enough if Appellant's conduct was "in the chain." (RR4, 16).

Further, "capable of" as used in the definition of a deadly weapon must mean "having the ability or qualities necessary for." Appellant's stopping or other maneuvering of his vehicle as he did was incapable causing the injury sustained by the CW, as it was contact between the CW's body and the roadway that caused the injury. Near misses between two moving objects may constitute an assault, but only in the form of a threat. The State, in charging the offense as it did, chose to ignore whatever harm was threatened by Appellant's conduct. The State therefore should not have been allowed to retrieve that theory to support its claim that Appellant's vehicle constituted a deadly weapon. Thus, the State could not rely on the idea that "objects used to *threaten* deadly force are in fact deadly weapons." *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (emphasis supplied). Instead, the State should have been "stuck" with the proof that, as used,

the vehicle "was not calculated to produce death or serious bodily injury." *See Mosley v. State*, 545 S.W.2d 144, 146 (Tex. Crim. App. 1976) (evidence failed to show aggravating factor). In other words, under the indictment, it was immaterial that "[t]he placement of the word 'capable' in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *McCain*, 22 S.W.3d at 503.

The CW's injury was not caused by how Appellant used his vehicle. The evidence shows only that the CW laid down his motorcycle to avoid a collision with Appellant's vehicle. This demonstrates that the operative factors of timing, distances, vectors, and speeds continued to actively protect the CW against that risk or danger. This also demonstrates that there was no use of a deadly weapon in what happened. The CW's road rash injuries occurred for a different reason. Thus, this case illustrates the principle that although the conduct of a defendant may create a dangerous situation, and even if the situation threatened the harm that occurred, the harm may still ultimately be identified as occurring for other reasons. When this true, it is wrong to conclude that the defendant caused the harm.

One of the prosecutors incorrectly argued that everyone could easily agree that a deadly weapon was used "here." (RR4, 15, 19). The second prosecutor incorrectly argued that a vehicle was always capable of causing death or serious bodily injury. (RR4, 35) ("I'm not saying everybody uses a deadly weapon every

61

time they get in a car, but I am saying that we all exhibit one. We all know that is something that is capable of causing death or serious bodily injury.").

Thus, it is thus little wonder that the jury found this incident involved a deadly weapon. Under the applicable definition of "deadly weapon," the State's evidence, however, failed to prove the use of the vehicle as a deadly weapon beyond a reasonable doubt. It was therefore incumbent on the trial court to provide the jury with the applicable law free of the State's incorrect arguments about the existence of an aggravating element.

The State plainly sought to prove Appellant used his vehicle to threaten serious bodily injury. (*See* RR2 54, 59). This claim may have been proper only if a conviction had been sought under Texas Penal Code § 22.01(a)(2). Even if Appellant braked suddenly and hard, the only thing this caused was a change in the speed of his vehicle and, to some unknown extent, the distance between his car and the CW's motorcycle. The slowing of Appellant's vehicle alone caused no injury to the CW. Whether Appellant's intended a sudden, severe stop to increase or broaden the capability of his vehicle (so as to more clearly enable him to cause an injury to the CW through use of his vehicle) depended on the coalescence of a great many other factors that simply were not proved in this case to allow his vehicle to qualify as a deadly weapon.

At a minimum, Appellant was entitled to have the jury carefully consider the possibility that he was guilty only of assault rather than forcing them to accept the State's improper arguments about the characterization of his vehicle. Because the trial court's failure to submit the requested lesser-included-offense instruction "left the jury with the sole option either to convict the defendant of the greater offense or to acquit him," a finding of harm is automatic. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995); *accord Robalin v. State*, 224 S.W.3d 470, 477 (Tex. App. Houston [1st Dist.] 2007, *no pet.*). And, "[T]he harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer." *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005).

### v. Error in submitting a misleading theory and comment on causation and result

The jury charge essentially asked the jury to determine whether Appellant caused the CW "to crash his motorcycle." This was not alleged in the indictment and thus was not authorized to be asked of the jury. But, more importantly, by incorrectly including this as an element of the offense, the trial court effectively linked the so-called motorcycle crash to Appellant even though the evidence showed the "crash" was exclusively the result of the CW's decision to lay down his motorcycle. This part of the jury charge amounts to a comment by the trial

court on the weight of the evidence, implying that the CW's decision was something foreseeable to Appellant and deflecting attention from the fact that the CW unexpectedly created the risk of any injury associated with sliding along the roadway. This error by the trial court reduced the State's burden of proof by making Appellant responsible for the motorcycle crash and the resulting injury to the CW without sufficient proof of a causal connection. Inclusion of such a comment in the charge is improper.

A trial court improperly comments on the weight of the evidence if it makes "a statement that implies approval of the State's argument, that indicates any disbelief in the defense's position, or that diminishes the credibility of the defense's approach to its case." *Hoang v. State*, 997 S.W.2d 678, 681 (Tex. App. Texarkana 1999, *no pet.*) (footnotes omitted) (citations omitted). For instance, an instruction that "a person's mental state may be inferred from words spoken and acts done" is an impermissible comment on the weight of the evidence in violation of Article 36.14. *Ward v. State*, 72 S.W.3d 413, 418-419 (Tex. App. Fort Worth 2002, *no pet.*). For a comment on the weight of the evidence to constitute reversible error, the trial court's comment must be one that is reasonably calculated to benefit the state or prejudice the defendant. *See Kincade v. State*, 552 S.W.2d 832, 835 (Tex. Crim. App. 1977). A charge that "assumes the truth of a controverted issue" is an improper comment on the weight of the evidence. *Whaley*

*v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986); *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex. App. Dallas 2007, *pet. ref.*). "Article 36.14 does not authorize the judge to give instructions with regard to factual matters, but only as to the applicable law." *Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993). A suggestion in a jury charge that certain evidence is true or untrue is a comment on the weight of the evidence. *Russell v. State*, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988). A court's charge in a criminal case may not assume that any fact has been proved against the defendant, however strong the evidence may be. *See Marlow v. State*, 537 S.W.2d 8, 9 (Tex. Crim. App. 1976):

> [T]he trial court should never assume as true a fact based wholly upon the State's testimonial, as opposed to physical, evidence. The jury is always entitled to doubt the credibility of any witness, and there are both statutory and constitutional inhibitions against any instruction of the trial court that tends to invade that province of the jury.

*Id*. at 11.

The jury charge must not "improperly focus the jury on the type of evidence that would support a finding" sought by the State. *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012). The court impermissibly guided the jury in their understanding of causation. *Id*. "Jurors should not be required and expected, and they are not under our law, to put together pieces of what may appear to them to be a jigsaw puzzle to determine which elements must be proved in order to find that the defendant committed the offense which he was charged with committing."

*Doyle v. State*, 631 S.W.2d 732, 737 (Tex. Crim. App. 1982) (emphasis in original).

The error in this case was egregious because it treated the CW's decision to incur road rash as something foreseeable to Appellant and muddled the requirement that Appellant must be found to have caused the bodily injury incurred by the CW rather than an amorphous "motorcycle crash." As a result, the comment on the weight of the evidence constitutes reversible error because it was reasonably calculated to benefit the State and prejudice Appellant.

### vi. Conclusion

The trial court erred and caused harm to Appellant because in its instructions to the jury, it failed to comply with Texas Code of Criminal Procedure Article 36.14 and the Sixth Amendment by committing the following errors: (1) submission of the option of the "reckless" mental state; (2) submission of the options of the "intentional" or "knowing" mental states; (3) submission of the deadly weapon theory; (4) failure to submit lesser-included offense options; and (5) submitting a misleading theory and commenting on causation and result. As a result, Appellant asks this Court to reverse the Judgment and sentence and remand this case for a new trial.

4. **Issue Four: By excusing five prospective jurors "for cause" because of alleged prior arrests, but without legal cause in fact as required by Texas Code of Criminal Procedure Article 35.16, the trial court erred and deprived Appellant of the right of a jury selected in under Article 35.16 and as required by the Sixth Amendment. A defendant's substantial rights are violated when a trial court breaches the same procedural statute multiple times.**

   i. **Argument**

The Court granted challenges "for cause" made by the State to the qualifications of five prospective jurors and excused them from the jury panel. (RR2 184-186). The basis stated for the challenges was that the five jurors failed to truthfully answer a question posed to them about whether he or she had ever been arrested. (RR2 106-124, 183-184). The State argued that those jurors had not disclosed the arrests purportedly shown on their criminal histories (which the prosecutor had obtained before trial). The State sought to paint them as liars and unreliable. The criminal histories relied upon by the State are included (but sealed) in the appellate record. (Court Exhibit 1).

The State made no effort to point out or question the prospective jurors about the discrepancy or even make it possible for defense counsel to do so. Defense counsel correctly argued that the court had no authority to grant the State's requests on the basis asserted (that failure to disclose a prior arrest is not a basis for challenging for cause). (RR2 186); see Tex. Code Crim. Proc. Art. 35.16 (2015) (stating the 14 reasons for dismissal of prospective jurors that are available to the State). The State failed to offer a valid reason for dismissal of the jurors, and

the trial court applied the wrong standard in sustaining the challenges. This was error. *Jones v. State*, 982 S.W.2d 386, 388 (1998).

In *Jones*, the Court of Criminal Appeals reaffirmed the rule that to show error in the trial court's grant of the State's challenges for cause, a defendant "must demonstrate one of two things: (1) the trial judge applied the wrong legal standard in sustaining the challenge, or (2) the trial judge abused [his] discretion in applying the correct legal standard." *Id*. at 389. A reviewing court must uphold the trial court's decision if it was correct under any theory of law applicable to the case, even if the trial court gave an incorrect reason for its decision. *Id*.; citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Further, the erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury. *Jones*, *id*. at 394.

By granting the State's challenge for cause of the five jurors for an invalid reason, the trial court effectively gave the State additional peremptory strikes (beyond the ten allowed by law), which excluded *qualified* jurors and, more importantly, altered the sequence and "strike zone" of the panel members by four persons (the fifth challenge for cause applied to a juror who would never have served anyway). This statement is made even though the Court of Criminal Appeals denied such rulings had the effect of adding peremptory strikes when it observed that raising a disqualification of a juror was not necessarily related to a

determination on a partisan basis that the juror was undesirable. *Jones*, *id*. at 394. But, where the panel member is clearly *not* disqualified, the purpose of the objection has to be to deceive the trial court into removing from the panel someone whom the prosecutor does not desire to leave available for service on the jury selected (so that he does not have to use a peremptory strike or leave another undesirable on the jury). Here, five jurors were removed for an improper reason, not merely one.

The *Jones* court also held that a "defendant's only substantial right is that the jurors who do serve be qualified," which is taken to mean that a "defendant's rights go [only] to those who serve, not to those who are excused." *Jones*, *id.* at 393; *see also Williams v. State*, 417 S.W.3d 162, 174 (Tex. App. Houston [1st Dist.] 2013, *pet. ref.*) ("If the jurors who serve are qualified, then the jury is lawfully constituted, the defendant's substantial rights are not affected, and reversal of the defendant's conviction based on the erroneous granting of a challenge for cause is not required.").

But, a defendant has a substantial right have his case tried according to procedural rules established by law for selection of a jury. *See Chappell v. State,* 850 S.W.2d 508, 512 (1993). And, "[I]n cases involving breach of many procedural statutes the record will contain no concrete data from which an appellate court can meaningfully gauge that the error did or did not contribute to

the conviction or punishment of the accused." *Id.* at 512; *Roberts v. State*, 784 S.W.2d 430, 435 (Tex. Crim. App. 1990).

So the question becomes whether Appellant's substantial rights were violated when the trial court breached the same procedural statute multiple times (five times in this case). Appellant asks this Court to hold that Appellant's substantial rights were indeed violated.

A defendant has a right under the Sixth Amendment to an impartial tribunal: "In all criminal prosecutions the accused shall have a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. Amend. VI; *see Duncan v. Louisiana*, 391 U.S. 145, 149-150 (1968) (the Fourteenth Amendment makes the Sixth Amendment applicable to the states). A defendant is also entitled to a juror educated about and willing to follow the law and who does not go out of his way to favor one party over another. *Abdygapparova v. State*, 243 S.W.3d 191, 210 (Tex. App. San Antonio 2007, *pet. ref.*) (finding "a harm analysis is not warranted" because denial of the right to an impartial judge "is structural error"). Due process requires a neutral and detached judge. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A judge should not act as an advocate or adversary for any party. *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App. Houston [14th Dist.] 2007, *pet. ref.*). "[D]ue process

70

will not permit a judge to assume the role of a prosecutor." *Avilez v. State*, 333 S.W.3d 661, 673 (Tex. App. Houston [1st Dist.] 2010, *pet. ref.*). The trial court should always act as a neutral arbiter between the advocates. *Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003); *Johnson v. State*, 452 S.W.3d 398, 405 (Tex. App. Amarillo 2014, *pet. ref.*).

Since those summoned as jurors are presumed to be qualified to serve, a defendant can never show that any of the twelve persons who actually serve on a jury could not lawfully do so. Where a prospective juror (although qualified) is excused without a valid reason, the most the defendant can show is that a different group of twelve persons would have constituted his jury and that the voting might have gone differently as a result. Excusing jurors without a legal reason also interferes with the implicit right of a defendant to have jurors chosen according to the order in which they are seated after a reshuffle. *See* Tex. Code Crim. Proc. Art. 35.11 (2015); *see also* Tex. Code Crim. Proc. Art. 35.20 (2015). The advantage of requesting a reshuffle may be lost if someone's position on the panel is again artificially altered. Allowing an improper challenge for cause could also easily allow for the exclusion of a juror in violation of Article 35.261, which prohibits the exclusion of persons from the jury on the basis of their race, but without the protective features of that statute.

Appellant was plainly entitled to have a different set jurors adjudicate his case and to have the State restricted to the legal number of strikes. He lost the benefit of the fact that "different jurors may have found a reasonable doubt as to [his] guilt." *Montez v. State*, 824 S.W2d 308, 310 (Tex. App. San Antonio 1992, *no pet.*); *see also Knight v. State*, 839 S.W.2d 505, 511 (Tex. App. Beaumont 1992, *no pet.*). And, the State received something not allowed by law.

### ii. Conclusion

By excusing five prospective jurors "for cause" because of alleged prior arrests, but without legal cause in fact as required by Texas Code of Criminal Procedure Article 35.16, the trial court erred and deprived Appellant of the right of a jury selected in under Article 35.16 and as required by the Sixth Amendment. A defendant's substantial rights are violated when a trial court breaches the same procedural statute multiple times. As a result, Appellant asks this Court to reverse the Judgment and conviction and remand this case for a new trial.

**5. Issue Five: The trial court committed reversible error and violated Appellant's Sixth Amendment rights to confront a material witness by refusing to permit Appellant to show the exceptional bias or interest of the complaining witness and admit evidence that the complaining witness had a pending civil suit against Appellant arising out of the same incident.**

### i. Argument

It has long been established that the bias of a witness is a relevant issue at trial, and the Confrontation Clause gives a criminal defendant the right to explore potential biases of an accusing witness through cross-examination. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Further, "[A] defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). And, "[T] he fact that a witness has brought a civil suit against the defendant growing out of the same incident is admissible as tending to show interest and bias." *Cox v. State*, 523 S.W.2d 695, 700 (Tex. Crim. App. 1975). This is especially true when the witness against a defendant is the plaintiff against the same defendant in a pending civil suit (as opposed to the witness being a plaintiff against a third party). *See, e.g., Hoyos v. State*, 982 S.W.2d 419, 420-422 (Tex. Crim. App. 1998) (A defendant is not entitled to admit evidence of a witness's civil suit against a third party where the defendant failed to demonstrate that the civil suit biased the complainant since the primary issue in the criminal trial

73

was the identity of the perpetrator, which was an issue of no consequence in the civil suit, and so the confrontation clause did not apply.).

One of the reasons for the obvious bias of the CW is clear: a prior conviction may work a collateral estoppel in a subsequent proceeding if the identical issues for which estoppel is sought were litigated and directly determined in the prior criminal proceeding. *McCormick v. Texas Commerce Bank*, 751 S.W.2d 887, 889 (Tex. App. Houston [14th Dist.] 1988, *writ denied*). When an "issue ... was litigated and critical to the prior criminal conviction, [the convicted party] 'is estopped from attacking the judgment or any issue necessarily decided by the guilty verdict.'" *Francis v. Marshall*, 841 S.W.2d 51, 54 (Tex. App. Houston [14th Dist.] 1992, *no writ*).  Thus, a criminal defendant may be simultaneously found guilty of both a criminal and civil wrong and cannot litigate the issue of his guilt again in a civil action, since a fully litigated issue should not be retried. *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441, 447 (Tex. App. Houston [1st Dist.] 1993, *no writ*). This principle is particularly true here because except for the lesser burden of proof, the civil cause of action for assault is identical to a criminal prosecution for the same conduct. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n.4 (Tex. 2010) (noting several courts' observation that the elements of civil and criminal assault are the same); *Forbes v. Lanzl*, 9 S.W.3d 895, 900 (Tex. App. Austin 2000, *pet. denied*) (noting that elements of assault are the same in both

civil and criminal cases); *Hogenson v. Williams*, 542 S.W.2d 456, 458 (Tex. Civ. App. Texarkana 1976, *no writ*) (same); *see also* Comm. on Pattern Jury Charges, Texas Pattern Jury Charges—General Negligence § 6.6 (State Bar of Texas 2006) (using Penal Code's definition of assault in civil cases).

Appellant sought to offer proof that the CW was exceptionally biased and that his testimony should accordingly be even more carefully scrutinized for exaggeration or shading by the jury. (RR3 48-51). Appellant wanted to inform the jury that, based on a favorable finding of fact by them here, the CW was hoping to improve his position in a separate civil suit he had pending against Appellant for recovery of money damages as compensation for the personal injuries and damage to his motorcycle suffered as a result of the alleged assault.

The State objected to Appellant's offer of proof and the trial court denied Appellant the right to question the CW about this bias. (RR3 50-51). Appellant was deprived of his due-process right to cross-examine a material witness offering testimony against him (a witness rarely is more "material" than the complaining witness). Despite the State's objections, "[t]he fact that a witness has brought a civil suit against the defendant growing out of the same incident is admissible as tending to show interest and bias." *Cox v. State*, 523 S.W.2d 695, 700 (Tex. Crim. App. 1975). Appellant had the right for the jury to understand the CW's motives

and desires fully and completely before it could be fair and accurate in judging his ability to recall the truth, the whole truth, and nothing but the truth.

While a trial court has discretion to limit cross-examination, it is constitutional error to limit excessively a defendant's cross-examination of a witness regarding the credibility of the witness especially cross-examination concerning the witness's bias, prejudice, or motive for testifying. *See Olden v. Kentucky*, 488 U.S. 227, 231 (1988). The Sixth Amendment right to confront witnesses "includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). And, the Texas Rules of Evidence permit a defendant to "cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition." *Id*. at 563; *see also* Tex. Rule Evid. 613(b) (2015) (providing for impeachment of witness by evidence of alleged bias or interest in favor or against party); *Billodeau v. State*, 277 S.W.3d 34, 42-43 (Tex. Crim. App. 2009). ("The possible animus, motive, or ill will of a prosecution witness who testified against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him."); *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex.

Crim. App. 1998) ("Exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination.") The scope of permissible cross-examination is "necessarily broad." *Carroll*, 916 S.W.2d at 497. "A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify." *Id.*

The State appears to have argued that because it sought to prove that Appellant intentionally created the danger that led to the CW's decision to lay down his motorcycle, Appellant might actually be harming the CW by giving Appellant's insurer a basis on which to deny coverage or protection of Appellant against the CW's claim. Particularly because the State did not offer to restrict the State's claim of criminal liability against Appellant exclusively to an intentional culpable mental state, there was no merit to the State's argument that the verdict in the criminal case would have no effect on the outcome of the civil case (even assuming Appellant had insurance and that it afforded no protection for claims based on intentional harm to another).

It is clear that the trial court's exclusion of this evidence contributed to the jury's conclusion that Appellant caused the CW to injure himself. Thus, the error calls for reversal of the judgment. *See* Tex. Rule App. Proc. 44.2(a) (2015). The jury was strongly influenced by the CW's testimony concerning his opinions about

whether Appellant used his vehicle as a deadly weapon and acted with intent to harm the CW, but did not hear about the CW's financial motives for testifying as he did. (RR3 25, 31).

### ii. Conclusion

The trial court committed reversible error and violated Appellant's Sixth Amendment rights to confront a material witness by refusing to permit Appellant to show the exceptional bias or interest of the complaining witness and admit evidence that the complaining witness had a pending civil suit against Appellant arising out of the same incident. Appellant asks this Court to reverse the Judgment and sentence and remand this case for a new trial.

## X.      Conclusion and Prayer

For the above reasons, Appellant prays that as argued in Issue One, this Court reverse the Judgment and sentence and enter a judgment of acquittal.  As to Issue Two, Appellant prays that this Court reverse the Judgment and sentence and dismiss the indictment with prejudice.  As to Issues Three, Four, and Five, Appellant prays that this Court reverse the Judgment and sentence and remand the case for a new trial.

Respectfully submitted,

Michael Mowla
P.O. Box 868
Cedar Hill, TX 75106
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

**/s/ Michael Mowla**
Michael Mowla

## XI. Certificate of Service

I certify that on December 30, 2015, a true and correct copy of this document was served on Abel Reyna and Sterling Harmon of the District Attorney's Office, McLennan County, by email to abel.reyna@co.mclennan.tx.us and sterling.harmon@co.mclennan.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015).

**/s/ Michael Mowla**
Michael Mowla


## XII. Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because it is computer-generated and does not exceed 15,000 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 14,950 words in the entire document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point font. *See* Tex. Rule App. Proc. 9.4 (2015).

**/s/ Michael Mowla**
Michael Mowla